**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

**ANTONIO LEONARDO LEE,**

    **Plaintiff,**

**v.**                                        **CASE NO.:**


**GREGORY W. EDWARDS,**
District Attorney for Dougherty County, Georgia, in his individual capacity,

**INVESTIGATOR NAKIA BUTLER,** in his individual capacity,

    **Defendants.**
_____/

**<u>COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY</u>**

Plaintiff, **ANTONIO LEONARDO LEE**, sues Defendants, **GREGORY W. EDWARDS** and **INVESTIGATOR NAKIA BUTLER**, and alleges the following:

**<u>INTRODUCTORY STATEMENT</u>**

1. This civil action seeks money damages for Plaintiff, ANTONIO LEONARDO LEE, who was wrongfully arrested and accused of murder. His claims stem from a violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution, as well as violations of state law.

1

## JURISDICTION AND VENUE

2.  The Court has original jurisdiction of Plaintiff's federal causes of action because they arise from violations of his Fourth and Fourteenth Amendment rights under the United States Constitution. 28 U.S.C. § 1331; 42 U.S.C. §§ 1983, 1988.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims arising under Georgia law. 28 U.S.C. §1367(a).

4. Venue is proper in this Court because the acts, omissions, and practices underlying Plaintiff's Complaint all occurred within the jurisdiction of the United States District Court in and for the Middle District of Georgia.

5.  All conditions precedent to the filing of this suit have been performed, complied with, or otherwise waived or satisfied.

## THE PARTIES

6. Plaintiff, ANTONIO LEONARDO LEE, was at all times material hereto a citizen of Georgia who lived in Albany, Dougherty County, Georgia.

7. Defendant, GREGORY W. EDWARDS, the Dougherty County District Attorney, is a constitutional state officer for Dougherty County, Georgia, a political subdivision of Georgia.

8. Defendant, NAKIA BUTLER ("Investigator Butler"), was, at all times material hereto, employed by or acting as an agent of the District Attorney's Office as a law enforcement officer and/or investigator, and was acting in the course and scope of his employment and/or agency and under color of law.

2

## COMMON ALLEGATIONS OF FACT

9. On November 4, 2019, Teresa Cole was murdered at the Albany Bus Station in Albany, Georgia.

10. Parts of the heinous crime were recorded on the bus station's video surveillance system and the surveillance system from the Homerun Food Store directly across the street.

11. Based on the recordings, Teresa Cole was attacked and murdered between 8:19 p.m. and 8:30 p.m.

12. Law enforcement's investigation initially determined that an African-American homeless/unhoused man named Xavier Keeley was responsible for Teresa Cole's murder.

13. District Attorney Gregory W. Edwards obtained an indictment against Xavier Keeley for Teresa Cole's murder on February 13, 2020.

14. Xavier Keeley was arrested, jailed, and wrongfully charged with malice murder and aggravated assault of Teresa Cole.

15. D.A. Edwards announced that he would likely seek the death penalty in the case.

16. The District Attorney's Office eventually determined that Xavier Keeley was not involved with Teresa Cole's murder.

17. Xavier Keeley's case was placed on the "dead docket" on November 12, 2021, and he was released on bond.

3

18. The District Attorney's Office then began to re-investigate Teresa Cole's murder, settling on Plaintiff as the second target.

19. On April 15, 2022, Investigator Butler interrogated Plaintiff at the Albany Police Department.

20. Plaintiff denied any involvement in Teresa Cole's murder.

21. Video surveillance from the Homerun Food Store, which was in the possession of the District Attorney's Office prior to Plaintiff's arrest, showed Plaintiff leaving the bus station prior to the murder, and heading in the direction that was northeast of Albany Bus Station.

22. Among other things, Plaintiff told Investigator Butler that likely took an Uber or Lyft home during the operative window of time, and that his phone records would have exculpatory information.

23. He even gave Investigator Butler the passcode to his cell phone and a DNA sample.

24. Investigator Butler did not examine the Lyft application data.

25. Neither Investigator Nakia Butler nor the District Attorney's Office issued an investigative subpoena and/or obtained a search warrant for Plaintiff's phone records and/or Uber or Lyft records.

26. On April 15, 2022, following the interrogation, Investigator Butler caused Plaintiff to be arrested at the Albany Police Department for  Teresa Cole's November 2019 murder.

27. District Attorney Edwards obtained a criminal indictment of Plaintiff from a Dougherty County Grand Jury and charged Plaintiff with Malice Murder, Felony Murder, and Aggravated Assault.

28. As a result of his arrest, Plaintiff was wrongfully incarcerated at the Dougherty County Jail in Albany, Georgia, for several months.

29. Pursuant to Georgia's state law, Malice Murder is a capital offense which is punishable by death or by life in prison.

30. Plaintiff petitioned the Superior Court to be released on bond, which the District Attorney's Office vehemently opposed.

31. As a result of the District Attorney's Office's opposition to the motion for bond, the court denied it.

32. After being indicted, Plaintiff retained Kareem L. Todman as counsel to represent him in the criminal case.

33. Through a court-issued subpoena, Mr. Todman obtained Plaintiff's account records from Lyft, Inc. for the operative period of time.

34. According to Plaintiff's Lyft records, on November 4, 2019, a passenger/rider was picked up near an area northeast of Albany Bus Station by a Lyft driver at approximately 8:03 p.m. and, at approximately 8:10 p.m., the passenger/rider was dropped off near 726 Barkley Avenue, Albany, Georgia. The records further show that the ride was requested at 7:56 p.m.

35. Those records were then disclosed to the District Attorney's Office in discovery.

36. At all times material hereto, Plaintiff resided at 723 Barkley Avenue, Albany, Georgia.

37. Given the distance between Plaintiff's residence and the Albany Bus Station, Plaintiff could not have made it back in time to murder Teresa Cole.

38. On June 23, 2023, District Attorney Edwards filed a Motion to *Nolle Prosequi* the criminal indictment filed against Plaintiff. In that motion, the District Attorney's Office told the court: "Evidentiary developments have effectively raised doubt on [Plaintiff's] culpability in the crimes enumerated..."

39. On June 23, 2023, the Superior Court granted the Motion to *Nolle Prosequi*, which dismissed the criminal indictment filed against Plaintiff.

40. On the same date, the court entered nolle prosses for all four of the charges against Xavier Keeley, the prior suspect whose case had been on the "dead docket."

**COUNT I**
**Malicious Prosecution: 42 U.S.C. § 1983 and the Fourth & Fourteenth Amendments**
**(*Against Investigator Butler*)**

41. Plaintiff re-alleges the allegations in paragraphs 1–40.

42. The Fourth Amendment to the United States Constitution protects Plaintiff from unreasonable seizures by the government, including arrest and pretrial detention.

43. The Fourteenth Amendment to the United States Constitution extends the Fourth Amendment's protections to actions by state actors including

Investigator Butler, and protects against deprivations of liberty without due process of law.

44. At all times material, Investigator Butler acted under color of state law and misused his power, which he possessed by virtue of state law.

45. Title 42 of United States Code Section 1983 is a vehicle by which Plaintiff can lawfully prosecute the violation of his Fourth and Fourteenth Amendment rights.

46. The legal process justifying Plaintiff's seizure, arrest, and incarceration in jail was constitutionally infirm.

47. Plaintiff's seizure would not have been justified without the infirm legal process.

48. Plaintiff was arrested under the process of law without probable cause.

49. The warrant obtained by Investigator Butler to arrest Plaintiff was procured in bad faith.

50. At all times material, Investigator Butler intended to confine Plaintiff, who was aware of the confinement, did not consent to it, and the confinement was not privileged.

51. In order to justify the seizure, Investigator Butler intentionally or recklessly made misstatements or omissions necessary to support the warrant and/or legal process.

52. While Plaintiff offered an easily verifiable alibi for his whereabouts at the time of the murder, Investigator Butler, having heard the alibi, intentionally or recklessly omitted that information.

53. Investigator Butler also intentionally or recklessly excluded the video of Plaintiff leaving the scene of the murder prior to the murder, walking to rendezvous with his Lyft ride, which was corroborated by his Lyft records.

54. If the video (which was in police possession) and Lyft records (easily obtainable by looking at the Lyft application on Plaintiff's phone) and other exculpatory evidence had been included in the warrant and/or legal process, it would have been evident that there was no probable cause. Viewing the discovery was the express reason for the *nolle prosequi*. Legal process was obtained only by intentionally or recklessly excluding exculpatory evidence.

55. Investigator Butler's actions and inactions were either intentional or so reckless as to violate Plaintiff's rights under the Fourth and Fourteenth Amendments.

56. Investigator Butler initiated, continued, and influenced the legal process against Plaintiff with his intentional or reckless omissions of exculpatory evidence.

57. The prosecution terminated in Plaintiff's favor via a *nolle prosequi*.

58. The prosecution does not intend to reinstate the Plaintiff's prosecution.

59. Investigator Butler acted with actual and legal malice.

60. The rights violated by Investigator Butler were clearly established at the time of the violation.

61. As a direct, foreseeable, and proximate result of Investigator Butler's misconduct, Plaintiff:

    a. was detained and arrested;

    b. was imprisoned for several months;

    c. was unlawfully detained and deprived of his personal liberty;

    d. was falsely accused and charged with malice murder;

    e. had to retain and pay private counsel to defend him;

    f. had to retain and pay private counsel to prosecute this lawsuit;

    g. experienced pain;

    h. made to suffer;

    i. experienced psychological and emotional trauma and distress;

    j. experienced mental anguish and humiliation;

    k. lost the ability to enjoy life;

    l. was inconvenienced;

    m. lost wages in the past; and,

    n. had his ability to earn wages in the future has been diminished.

62. Plaintiff's damages are ongoing.

63. Pursuant to the provisions of 42 U.S.C. §1988, Plaintiff is entitled to an award of reasonable attorney's fees as well as costs.

**WHEREFORE**, Plaintiff prays for judgment against Defendant, NAKIA BUTLER, for all compensatory and punitive damages allowable by law, attorneys

fees, costs, and pre- and post-judgment interest as allowed by law. Plaintiff also demands a trial by jury on all issues so triable.

## COUNT II
### Malicious Prosecution - O.C.G.A. § 51-7-40
### (*Against Investigator Butler*)

64. Plaintiff re-alleges the allegations in paragraphs 1–40 as if set forth herein.

65. O.C.G.A. § 51-7-40 protects and gives a right of action to citizens including Plaintiff from a criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted.

66. Investigator Butler wrongfully caused criminal proceedings to be instituted against Plaintiff with malice and absence of probable cause, or arguable probable cause, by submitting police reports and/or making statements to the District Attorney's Office and/or Dougherty County Grand Jury which contained false statements and/or material omissions which were relied upon to obtain a warrant.

67. Investigator Butler wrongfully caused criminal proceedings to be instituted against Plaintiff with malice and absence of probable cause, or arguable probable cause, by submitting police reports and/or making statements to the District Attorney's Office which contained false statements and/or material omissions which were relied upon to obtain an indictment charging Plaintiff with Malice Murder, Felony Murder, and Aggravated Assault.

68. Investigator Butler's actions were done with legal and actual malice.

69. The prosecution was terminated favorably to Plaintiff.

70. As a direct, proximate, and foreseeable result of Investigator Butler's misconduct, a criminal prosecution was carried on maliciously and without any probable cause and which caused damage to Plaintiff who:

    a. was maliciously prosecuted;

    b. was falsely arrested;

    c. was unlawfully detained and deprived of his personal liberty;

    d. was falsely accused and charged with malice murder;

    e. had to retain and pay private counsel to defend him;

    f. had to retain and pay private counsel to prosecute this lawsuit;

    g. experience pain;

    h. made to suffer;

    i. experience psychological and emotional trauma;

    j. experience mental anguish;

    k. lost the ability to enjoy life;

    l. was inconvenienced;

    m. lost wages in the past; and,

    n. had his ability to earn wages in the future has been diminished.

71. Plaintiff's damages are ongoing.

**WHEREFORE**, Plaintiff prays for judgment against Defendant, NAKIA BUTLER, for all compensatory and punitive damages allowable by law,

11

attorneys fees, costs, and pre- and post-judgment interest as allowed by law, and demands a trial by jury on all issues so triable.

## COUNT III
### Malicious Prosecution: 42 U.S.C. § 1983 and the Fourth & Fourteenth Amendments
### (*Against District Attorney Gregory W. Edwards individually*)

72. Plaintiff re-alleges the allegations in paragraphs 1–40 as if set forth herein.

73. The Fourth Amendment to the United States Constitution protects Plaintiff from unreasonable seizures by the government, including arrest and pretrial detention.

74. The Fourteenth Amendment to the United States Constitution extends the Fourth Amendment's protections to actions by state actors including the District Attorney, Gregory W. Edwards ("D.A. Edwards") and protects against deprivations of liberty without due process of law.

75. At all times material, D.A. Edwards acted under color of state law and misused his power, which he possessed by virtue of state law.

76. D.A. Edwards had a pattern of indicting homeless/unhoused African-American men and jailing them for months at a time under legal process that appeared to meet the standard of probable cause only because of intentionally or recklessly excluded exculpatory evidence.

77. His pattern, policy and/or custom was, in the absence of any probable cause, to indiscriminately charge unhoused African-American men for serious

crimes and publicize the arrests in the media and social media in order to appear to be making progress or producing results. For example:

    a. Just before Plaintiff was arrested, the District Attorney's Office accused Xavier Keely, another homeless/unhoused man, of killing Teresa Cole and falsely arrested him, holding him against his will for months in the Dougherty County Jail;

    b. The fact that the District Attorney had already done the same exact thing—charging the wrong man for Teresa Cole's murder—did not stop the District Attorney from doing the same thing all over again by causing Plaintiff to be indicted for such heinous crimes.

    c. On October 22, 2009, then-17-year-old Richard Hayes was arrested and charged with aggravated assault and gang participation and held in the Dougherty County Jail until March 9, 2011, when all criminal charges were dropped;

    d. Maurice Jimmerson was held in pretrial detention for more than a decade on suspicion of a double murder in May 2013 without ever being convicted of a crime (believed to be one of the largest pretrial detentions in American history) despite all of his co-defendants being acquitted by juries years earlier;

    e. And others to be identified throughout discovery.

78. D.A. Edwards knowingly facilitated and approved the aforesaid misconduct engaged in by himself and his subordinates.

13

79. D.A. Edwards consciously employed a policy of consciously jailing innocent citizens for the sake of appearing to be diligent in ferreting out criminals who appeared powerless to fight back due to their unhoused/homeless status.

80. The legal process justifying Plaintiff's seizure, arrest, and incarceration in jail was constitutionally infirm.

81. Plaintiff's seizure would not have been justified without the infirm legal process.

82. When Plaintiff was charged with the murder in this case, Xavier Keeley was still facing charges for the same murder.

83. Plaintiff was arrested under the process of law without probable cause and made maliciously.

84. The indictment obtained by D.A. Edwards was procured in bad faith.

85. D.A. Edwards went beyond his role a mere prosecutor by taking administrative and investigative steps, including actively participating in the criminal investigation of Plaintiff's case, and performing functions which are normally performed by a detective or law enforcement officer.

86. D.A. Edwards participated in press conferences with respect to the case.

87. At all times material, D.A. Edwards intended to confine Plaintiff, who was aware of the confinement, did not consent to it, and the confinement was not privileged.

88. In order to justify the seizure, D.A. Edwards intentionally or recklessly made misstatements or omissions necessary to support the indictment and/or legal process.

89. D.A. Edwards intentionally or recklessly omitted information about Xavier Keeley as a suspect when pursuing the indictment.

90. D.A. Edwards also intentionally or recklessly excluded the video of Plaintiff leaving the scene of the murder prior to the murder, walking to rendezvous with his Lyft ride.

91. D.A. Edwards intentionally or recklessly excluded Plaintiffs offer of an alibi—the Lyft ride—which was easily obtainable and verifiable by viewing Plaintiff's cell phone and/or the Lyft records.

92. Legal process was obtained only by intentionally or recklessly excluding exculpatory evidence.

93. D.A. Edwards's actions and inactions were either intentional or so reckless as to violate Plaintiff's rights under the Constitution of the United States.

94. D.A. Edwards initiated, continued, and/or influenced the legal process against Plaintiff with his intentional or reckless omissions of exculpatory evidence.

95. The prosecution terminated in Plaintiff's favor via a *nolle prosequi*.

96. The prosecution does not intent to reinstate the Plaintiff's prosecution.

97. D.A. Edwards acted with actual and legal malice.

98. The rights violated by D.A. Edwards were clearly established at the time of the violation.

99. As a direct, foreseeable, and proximate result of D.A. Edwards's misconduct, Plaintiff:

    a.  was detained and arrested;

    b.  was imprisoned for several months;

    c.  was unlawfully detained and deprived of his personal liberty;

    d.  was falsely accused and charged with malice murder;

    e.  had to retain and pay private counsel to defend him;

    f.  had to retain and pay private counsel to prosecute this lawsuit;

    g.  experienced pain;

    h.  made to suffer;

    i.  experienced psychological and emotional trauma and distress;

    j.  experienced mental anguish and humiliation;

    k.  lost the ability to enjoy life;

    l.  was inconvenienced;

    m. lost wages in the past; and,

    n.  had his ability to earn wages in the future has been diminished.

100. Plaintiff's damages are ongoing.

101. Pursuant to the provisions of 42 U.S.C. §1988, Plaintiff is entitled to an award of reasonable attorney's fees as well as costs.

102. Those District Attorney's Office's official policies and customs proximately and foreseeably caused and/or inflicted injury to Plaintiff who:

103. The aforementioned official and/or unofficial customs and policies are or were, at all times material, persistent and widespread.

104. Plaintiff can prosecute these claims pursuant to 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiff prays for judgment against Defendant, GREGORY W. EDWARDS, District Attorney for Dougherty County, Georgia, for all compensatory and punitive damages allowable by law, attorneys fees, costs, and pre- and post-judgment interest as allowed by law, and demands a trial by jury on all issues so triable.

## COUNT IV
### Malicious Prosecution - O.C.G.A. § 51-7-40
### (Against District Attorney Gregory W. Edwards individually)

105. Plaintiff re-alleges the allegations in paragraphs 1–40 as if set forth herein.

106. O.C.G.A. § 51-7-40 protects and gives a right of action to citizens including Plaintiff from a criminal prosecution which is carried on maliciously and without any probable cause and which causes damage to the person prosecuted.

107. D.A. Edwards wrongfully caused criminal proceedings to be instituted and/or continued proceedings against Plaintiff with malice and absence of probable cause, or arguable probable cause.

108. D.A. Edwards had a pattern of indicting homeless/unhoused African-American men and jailing them for months at a time under legal process that

17

appeared to meet the standard of probable cause only because of intentionally or recklessly excluded exculpatory evidence.

109. His pattern, policy and/or custom was, in the absence of any probable cause, to indiscriminately charge unhoused African-American men for serious crimes and publicize the arrests in the media and social media in order to appear to be making progress or producing results via a proverbial "scapegoat." For example:

 a. Just before Plaintiff was arrested, the District Attorney's Office accused Xavier Keely, another homeless/unhoused man, of killing Teresa Cole and falsely arrested him, holding him against his will for months in the Dougherty County Jail;

 b. The fact that the District Attorney had already done the same exact thing—charging the wrong man for Teresa Cole's murder—did not stop the District Attorney from doing the same thing all over again by causing Plaintiff to be indicted for such heinous crimes.

 c. On October 22, 2009, then-17-year-old Richard Hayes was arrested and charged with aggravated assault and gang participation and held in the Dougherty County Jail until March 9, 2011, when all criminal charges were dropped;

 d. Maurice Jimmerson was held in pretrial detention for more than a decade on suspicion of a double murder in May 2013 without ever being convicted of a crime (believed to be one of the largest pretrial

detentions in American history) despite all of his co-defendants being

acquitted by juries years earlier;

e.  And others to be identified throughout discovery.

110. D.A. Edwards knowingly facilitated and approved the aforesaid misconduct engaged in by himself and his subordinates.

111. D.A. Edwards consciously employed this "scapegoat" policy for its own political benefit, consciously jailing innocent citizens for the sake of appearing to be diligent in ferreting out criminals who appeared powerless to fight back due to their unhoused/homeless status.

112. The legal process justifying Plaintiff's seizure, arrest, and incarceration in jail was constitutionally infirm.

113. Plaintiff's seizure would not have been justified without the infirm legal process.

114. When Plaintiff was charged with the murder in this case, Xavier Keeley was still facing charges for the same murder.

115. Plaintiff was arrested under the process of law without probable cause and made maliciously.

116. The indictment obtained by D.A. Edwards was procured in bad faith.

117. D.A. Edwards went beyond his role a mere prosecutor by taking administrative and investigative steps, including actively participating in the criminal investigation of Plaintiff's case, and performing functions which are normally performed by a detective or law enforcement officer.

19

118. He extended immunity to Xavier Keeley—the person he had charged with the murder and threatened in the press with the death penalty.

119. D.A. Edwards participated in press conferences with respect to the case.

120. At all times material, D.A. Edwards intended to confine Plaintiff, who was aware of the confinement, did not consent to it, and the confinement was not privileged.

121. In order to justify the seizure, D.A. Edwards intentionally or recklessly made misstatements or omissions necessary to support the indictment and/or legal process.

122. D.A. Edwards intentionally or recklessly omitted information about Xavier Keeley as a suspect when pursuing the indictment.

123. D.A. Edwards also intentionally or recklessly excluded the video of Plaintiff leaving the scene of the murder prior to the murder, walking to rendezvous with his Lyft ride.

124. D.A. Edwards intentionally or recklessly excluded Plaintiffs offer of an alibi—the Lyft ride—which was easily obtainable and verifiable by viewing Plaintiff's cell phone and/or the Lyft records.

125. Legal process was obtained only by intentionally or recklessly excluding exculpatory evidence.

126. D.A. Edwards's actions and inactions were either intentional or so reckless as to violate Plaintiff's rights under the Constitution of the United States.

127. D.A. Edwards initiated, continued, and/or influenced the legal process against Plaintiff with his intentional or reckless omissions of exculpatory evidence.

128. D.A. Edwards's actions were done with actual malice.

129. The prosecution was terminated favorably to Plaintiff.

130. As a direct, proximate, and foreseeable result of D.A. Edwards's misconduct, a criminal prosecution was carried on maliciously and without any probable cause and which caused damage to Plaintiff who:

    a.  was maliciously prosecuted;

    b.  was falsely arrested;

    c.  was unlawfully detained and deprived of his personal liberty;

    d.  was falsely accused and charged with malice murder;

    e.  had to retain and pay private counsel to defend him;

    f.  had to retain and pay private counsel to prosecute this lawsuit;

    g.  experience pain;

    h.  made to suffer;

    i.  experience psychological and emotional trauma;

    j.  experience mental anguish;

    k.  lost the ability to enjoy life;

    l.  was inconvenienced;

    m. lost wages in the past; and,

    n.  had his ability to earn wages in the future has been diminished.

131. Plaintiff's damages are ongoing.

**WHEREFORE**, Plaintiff prays for judgment against Defendant, GREGORY EDWARDS, for all compensatory and punitive damages allowable by law, attorneys fees, costs, and pre- and post-judgment interest as allowed by law, and demands a trial by jury on all issues so triable.

### Demand for Trial by Jury

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted on this 9th day of April 2024.

**FISCHER REDAVID, PLLC**

/s/ Kareem L. Todman
Kareem L. Todman, Esq.
Ga. Bar No.: 833621
130 Salem Court
Tallahassee, Florida 32301
Tel. (954) 860-8434 / Fax (954) 860-8584
E-mail: kareem@yourchampions.com
E-mail:kareem@todmanlaw.com

22